In his play Macbeth, Shakespeare gives a memorable portrait of a gatekeeper whose lackadaisical attitude towards his duty provides some comic relief in an otherwise very dark drama. However, it's the same gatekeeper who unknowingly opens the gate and admits the killer of King Duncan. And of course, tragedy follows from this. In this case, the District Court failed in its dismissal of the gatekeeper as envisioned by the Supreme Court in Daubert. The District Court abused its discretion twice in failing to order further inquiry. You're talking about the fingerprint issue? The fingerprint issue, that's correct. These are exemplar prints. I don't know what you're talking about. All the controversy out there has to do with latent prints. But as pointed out to the District Court, and I believe is fully clear about latent prints, because what we are concerned with is certain factors such as are there standards in place? Is there an error rate that's known? Is it been tested? Those all apply whether we're talking about rolled prints or latent prints. You got a hearing on it and the District Court ruled, right? Pardon? You got a hearing on the issue? No, we didn't, Your Honor. What we had was a briefing discussion during the preliminary hearing on this. And actually what was requested in the preliminary was that there be a full hearing on Daubert after there was a very substantial documentary proffer by the defense. That was denied. Later on, Judge Lorenz allowed a voir dire of the expert, but solely on the issue of his qualifications. The Daubert issue was settled. And in fact, when it was settled, Judge Whelan confirmed that, that he was not reopening the Daubert issue. He was only allowing voir dire as to qualifications. Do you have a case on rolled fingerprints versus latent fingerprints? No, I don't, Your Honor. Look, we're writing on a new slate after all these years of accepting rolled fingerprints. This case will raise the issue for the first time as far as using Daubert to invalidate or to question the validity or acceptance of rolled fingerprints. That could very well be, Your Honor. Not very well be. You're telling me it is. You're asking us to write on that for the first time. Yes, Your Honor. In spite of all the law that's behind us. Well, because I would believe, Your Honor, that the same features apply regardless. I would analogize it to the use of DNA. DNA as being one thing. Let's stick with this. What's causing us to shift gears all of a sudden? Daubert's been out for years. Rolled Because it's been discovered that, as is pointed out in the pleadings file below, that when latent prints, when fingerprints were first accepted by the court. We know about the latent prints. Now tell me about rolled prints and tell me why we should move over when all the cases have talked about latent prints. So you want to take the science of latent prints and implant it over on rolled prints. Because the scientific basis for both of them is identical. There is no difference. The difference between the latent prints and the rolled prints is simply the matter of how much degree of artifactual interference there is in the analysis. That is, there's no difference. The exact same scientific principles underlie it. The exact same procedure is applied. The only difference is that we are dealing with certain, in the forensic context, we're dealing with specimens that have some artifacts because of the way that they are produced. And that makes it a more difficult task. But it doesn't change the underlying science. It doesn't change the underlying principles. Let's say we buy into this. What difference does it make? Is your client disputing? Is he saying they got the wrong guy? No, Your Honor. What he's asking is that he is... Well, yes or no? Is he claiming they got the wrong guy? Your Honor, what he's... he is claiming that there are not... there's not a scientific basis for this evidence. Yes or no? Is he claiming they got the wrong guy? With all due respect, Judge Kaczynski, I don't believe that's the issue here. You know, I understand you don't think it's the issue. That's my question. I'll give you one more chance to answer it. If you're not going to answer it, that's fine. And then I will not have an answer to my question. But you will not be able to claim when the decision comes out that I didn't give you a chance to answer the question. I understand. So let me ask you for a third and last time. Does he claim they got the wrong guy? It has not been proved by the government. It's not a yes. It is not a no. Is he claiming they got the wrong guy? If Your Honor is forcing me to make the decision between I have to say that no, they have not. It is not him. It is not he because it hasn't been proved. It hasn't been proved beyond a reasonable doubt because it's on the basis of evidence whose scientific reliability has not been sufficiently established. So you're abstracting this. You want us in the abstract to determine the validity of Roald Prince in relation to the Leighton-Prince law in a case where your client isn't relying on the result but just wants to destroy the validity of Roald Prince. You're not saying he's not relying on the result. You're saying that they haven't proved the case against him. Correct. Has any evidence been admitted? You're not saying that you are affirmatively claiming he's innocent. You're just saying that they haven't proved that he's guilty. Which is Mr. Calderon's right. There's a system in this case. Correct, Your Honor. Except we've got something called harmless error, you see, and the question is if there really is no genuine dispute as to whether this is the guy, other than the fact that the fingerprints were or were not publicly authenticated, it doesn't make no difference at all. It doesn't change the outcome, and so we don't have to reach the issue. Interesting though it may be. Your Honor, I think that... You think we don't have to reach the issue of whether or not there's enough evidence to convict him without the fingerprints? Are you claiming that without the fingerprints that the conviction should be set aside because there's not sufficient evidence that he is the right guy? I believe so, Your Honor, for three reasons. I think that it cannot possibly be harmless, even if the government had actually argued that in its briefs, which it didn't, that this cannot be harmless for three reasons. One, because of the fact that scientific evidence in itself carries extraordinary weight. That's the understanding of Daubert, and the reason for having special consideration. But if there's no dispute over the issue, it doesn't matter how much weight it carries. The issue goes to identification, though. That's correct, and that was... Now, is he... maybe a different way to put that, because that's the question. Is there any dispute as to whether the government proved, in the absence of the fingerprints, that he is the person who committed the crime? It was heavily relied... the identification was heavily disputed at trial, and it was heavily relied on by the government, an argument that the fingerprint evidence, as described in several places in the argument, is extremely important. As being... the government referred to... there's five pages of the government's argument is devoted to discussing the fingerprint evidence. And then finally, in rebuttal argument, the government says, that's important because, one, the fingerprint on the warrant is the most important document. This was the key, the central connecting identification link. You say stuff like that all the time. The key to proving what? Proving the identity of Mr. Calderon with the person identified. All right, so you are claiming that this is critical to establishing an element, a disputed element, of the offense. Yes, it was very heavily disputed and debated in final argument. And that's why it was critical here that there actually be a showing, a reasonable determination, that this evidence, in fact, was reliable. It's not simply the extensive proffer which was made, a documentary proffer, but in the second round here, there were two instances where the judge failed to hold an evidentiary hearing. When Judge Whelan allowed the voir dire on the expert, it appeared then on the record, even though that wasn't totally within the scope of the qualifications, what came out in the testimony was that there were two specific deviations from the accepted standard protocol that has been discussed in all the case law in this particular case. Mr. Beers, the expert here, number one, does not use verification, which all the sources indicate is an essential element. As far as I understand, he uses rolled fingerprints, accepted technology and, if you will, science. And you're bringing in a latent fingerprint science and, again, trying to graft it onto the roll. So I understand where you're going, but I think there was a differential there about what science. He didn't proclaim to be a latent fingerprints expert. That's true, Your Honor, but he also claimed in testimony that his technique, his procedure, his protocol was essentially the same as the latent print. He's saying that they're identical when, in fact, they weren't because it admitted the essential verification step. A second substantial deviation from the accepted protocol was the fact that he said he does not go beyond level one detail. From what I can tell from the case law and from the technical literature, every examiner uses at least level two detail. And the FBI's protocol is to use level two and some level three. Ashbaugh, the expert for the Royal Canadian Mounted Police, has developed a technique he calls ridgeology, which only looks at level three. Is that for latent or for rolled? That's for either type. And that's on the record? That's in the record, yes. That's at least substantiated in some of the cases that are cited in the government's brief and in the appellant's brief. I would particularly refer the Court's attention to Mitchell, the Third Circuit case. It's probably the most extensive post-Daubert analysis of this area. All right. Well, we're a minute over already, so we'll give you a minute for rebuttal. If I could ask the Court for just maybe 30 seconds to go to the matter in the 20-AJ letters. All right. I just wanted to mention that there was clear Covey and Sandoval error in this case, because the district court made a finding as to the date and existence of a prior deportation. This was objected to and preserved below on apprendee grounds, the very grounds which Covey and Sandoval applied. This is not harmless error, as claimed in Martinez-Rodriguez, because Mr. Calderon relied on the fact that there was not an allegation in the indictment of the 1326B elements to wit the date of the deportation. Unlike Martinez-Rodriguez, which did not consider the indictment question, failure of an indictment is structural error and must be reversed. The sentence has to be vacated and remanded with instructions that the sentence be no more than 24 months, which is the statutory maximum under apprendee for this case. Thank you for your indulgence. One minute. I have a technical question that we uncovered. At the time the pre-sentence report came out, you objected to the fact that you did not have the attached documents relative to the underlying convictions on the forcible rape. Do you remember that? And it's the Almendora's Torus argument? Correct. That was part of that? There was then an amendment to the pre-sentence report that was filed, which the judge relied upon and referred to in the amendment, was the fact that the conviction documents in the lower court were attached. And in your objections and the objections for the defendant, from what I can see from the sentencing transcript, that objection was not made at the time, and so it affects the question because your excerpts of record did not have the documents attached. Yes. So I assume that we're not worrying now about whether or not those documents were attached at the time that the judge made the sentencing ruling. No, not as to the prior conviction. Right now we're focusing only on the court. That was a problem we had to hurdle because it wasn't it. And we asked, whether you know it or not, our records department asked the government to furnish whatever the judge looked upon, and we were furnished with the documents, and I wanted you to know that. Okay, thanks very much, Your Honor. What's the date of your current E.T.A. letter? There were two. One from November 28th and one from November 30th. The first one addressing Colvin Sandoval. The second one addressing Martinez Rodriguez. And the issue you want us to look at is? Both of them address the same issue. Martinez Rodriguez just found that Colvin Sandoval error could be harmless, but only as to the trial rights of trial by jury and proof beyond a reasonable doubt. It did not address the indictment claim, which Mr. Calderon raised below. Thank you, Captain. Are you going to address that issue, too? Yes, Your Honor. Okay, thank you. And may it please the Court and Counsel, good morning. Hamilton Ayrton for the United States. I plan to focus my comments this morning a little more towards the Colvin and Martinez issue, but given the Court's focus on the fingerprint evidence, I'll discuss that as well. Counsel focused on it, and I'm trying to sort through this. Where am I going wrong, or where is counsel trying to say we're supposed to be going here? I'm trying to get to the fact that there seems to be science and cases with regard to latent prints. There seems to be science, which was adopted by the district court, on roll prints. Now, what am I missing here? Do we actually have a record which shows that there's science that crosses both areas, and the judge abused his discretion by not adopting that science and only going with the expert who was a rolled fingerprint expert? What is your understanding of the record? Well, I respectfully disagree with the opposing counsel on this particular point. The record in this case was that these were exemplar prints, and there are a couple of reasons why the opinions from this circuit and some other circuits, there are not as many addressing exemplar prints. And the science, the reason that latent prints are generally not viewed with or viewed as being a little bit more skeptical than exemplar prints are because the ridge detail is not always as clear. But the courts have consistently held that even in the latent print context, the process of comparing and evaluating fingerprints easily meets the Daubert standards. That was briefed to the court. The court considered the issue. The court heard argument on the issue, and the court determined that the evidence was admissible. And what's important is that in this case, the prints were even better than the types of prints that have normally been relied on, the latent prints, because they were exemplar prints. And I noticed in counsel's brief on page 11, even his expert was talking about the difference between exemplar and latent prints and says that David Ashbaugh, who's the gentleman that the opposing counsel referred to, the exemplar print is usually taken under ideal conditions and should have more clarity than the latent print. And then counsel says, this is argument, having said that, that is not always the case. On occasion, the latent print has more clarity than the exemplar. So the prints that we were dealing with are actually even more reliable than the prints that have routinely been upheld, which are the latent prints. And just before I turn to the Cobian issue, just another point for the court. As Kumo and Alatorre and some of the other cases made clear, when the court decided Daubert, it really changed the analysis of how courts were adopting expert opinion and how they were reviewing it. And it changed from this hard and fast rule to a more fluid concept where they would evaluate all the Daubert factors. But more importantly, in some cases, and I think the quote was, where an expert's methods can ordinarily be taken for granted, I guess that's the perfect case for where a court does not need to hold a Daubert hearing. And in this case, the court did not hold a formal Daubert hearing where the expert testified, but it did hear argument, it considered the briefs filed by counsel, and then it made the exact type of decision which this court asked the district court to make, that the methodology was reliable and that the evidence was admissible. Also, the expert, in this case, was subjected to perhaps the best truth-finding device that there is, cross-examination, which this court has routinely held as one of the best ways to actually challenge the weight of the evidence, which is really what Mr. Calderon-Segura's argument went to. He didn't choose to call an expert to evaluate that fingerprint, but he did voir dire the fingerprint expert extensively. And the last point I would make on that is that opposing counsel referenced that there wouldn't be harmless error because the fingerprint was of utmost importance. Certainly the government, and I argued this case below, I prosecuted this case on behalf of the United States, the government did rely on the fingerprint, but it was all part of a big picture, which really presented overwhelming evidence against Mr. Calderon. And in this passage that counsel referenced, I would just note that when we're talking about that warrant of deportation, the government does say that the fact that there may be fingerprints on here to show that they are the defendant's and that he was the one who was deported. Counsel goes on to mention it has got his name right there, it has got his A number right there, and the warrant has his picture, and they all match up. So there was lots of other evidence supporting the fact that this gentleman was the one who was deported from the United States, which is the element that opposing counsel was relying on. There was a photograph? Yes, Your Honor, on the warrant of deportation. That's correct, which was found in the A file, which also matched up with other photographs of the defendant, and they were all based on his A number. So I'd respectfully submit that even if there were some problem with the fingerprint evidence, which there was not in this case, the evidence was overwhelming against the defendant, and certainly any purported error in admitting the fingerprint evidence would not have in any way affected the verdict. You wanted to talk primarily about the other issue. That's correct, Your Honor. Let me turn to that, Your Honor. As the Court is well aware, this is a constantly evolving issue that's in flux. I think we've had three or four opinions in the last month dealing with this Covian error, and there are just three points I'd like to make to advance the government's position. The first is that the recent case of Lopez makes it clear that when this Court decided Castillo-Rivera in basically saying that this Almendores-Torres exception that's been carved out for Apprendi-type violations, that that does apply in the 1326B context, even though we are talking about the dates of removal. And Lopez does not even cite Covian, and the government's position is that because Castillo-Rivera, and I believe the case that originally was Pacheco, that because Castillo-Rivera is the first opinion from a three-judge panel, that until this Court makes a decision en banc, that that is the case that controls. But more importantly, there are two other reasons why in this case there really is no question that there was any error. And the first is that this case presents the exact facts of Martinez-Rodriguez. This was a trial. It was not a straight-up guilty plea where the defendant did not admit the date of his deportation. The government relied on one deportation. That deportation was in 1999, in July of 1999. And the government had to prove that the defendant was deported as one of the elements of the offense. The jury came back with a guilty verdict. And as the Court said in Martinez, that's not even a plain error case. That's a no-error case. Because in this situation, the jury has inherently determined, beyond a reasonable doubt, that when the date of the deportation is. And because the defendant did not dispute, and there is no dispute, that his aggravated felony came before that in 1997, I believe. It was a forcible rape conviction in 1997, August. What was the argument that this should have been an indictment? Well, there are a couple answers to that, Your Honor. The first is that there's some precedent in this Court, Dubot and Resendez-Ponce, which would indicate that that's structural error. And the government's position is twofold in that regard. The first is that those cases have been recently called into question by cases from the Supreme Court, particularly Cotton. In Dubot, the court, it was a Hobbs Act violation case. And the Ninth Circuit said, look, you didn't plead the proper mens rea in this case. You didn't include an intent element. And the defendant objected and asked to have the indictment dismissed. And the Court said, in that situation, that's structural error. It's not subject to a harmless error review. Resendez-Ponce was a similar issue where the government did not allege an attempted entry, an overt act, in connection with an attempted entry. Again, the defendant objected before trial and asked to have the indictment dismissed. And again, the Court said, in this situation, it's a structural error. The reason those opinions really have been undermined is because in Cotton, which dealt directly with an apprendee challenge, the government had failed to include a quantity in the indictment. The Court said, this does not make any public policy sense. What we have in this situation is overwhelming evidence that the defendants were involved in a vast drug conspiracy. And in that type of situation, the Court can apply the harmless error standard and say, even though this wasn't included in the indictment, there's no error. We can't reverse in this situation. And the public policy grounds for that make a lot of sense. And I think the quote from the Court really said it best in evaluating the harmless error standard, the plain errors. Is this in Cotton, your reading? Yes. Yes, Your Honor. Go ahead. The real threat to the fairness, integrity, or public reputation of judicial proceedings would be if the respondents, despite overwhelming and uncontroverted evidence that they were involved in a vast drug conspiracy, were to receive a sentence prescribed for those who commit substantially less of a drug offense because the error was not objected to a trial. And that makes a lot of sense. We want to encourage people to be objecting when they need to and to encourage effective advocacy. When was the error here raised? Was it raised before trial? Your Honor, the error was never raised in this case. I respectfully disagree with Mr. Fyfe. I cannot find anywhere in the papers where he specifically alleges that the date was not included in or that the Court found the date of his deportation. And with regard to the indictment, which I believe is, Your Honor, a specific question, he never moved to dismiss the indictment on those grounds. There was no pretrial motion challenging the indictment. Your Honor, there was a pretrial motion challenging the indictment, but not on those grounds. On those grounds. That's right. He alleged that we needed to include a different mens rea, that we should have alleged invasion of inspection, and the Court heard argument on those motions and denied them. But that's really the twofold reason why, in this case, it's just the argument lacks merit. Because not only did he not object, but the Supreme Court's reasoning in why those types of errors should not be structural when there's overwhelming evidence really makes policy sense as well. And I believe that Resendez-Ponce, or Ponce, is actually right now on certiorari with the Supreme Court. So, you know, particularly in this kind of case where there is no objection below, it doesn't really make sense to strike that portion of the indictment, again, when the law is in flux. And, you know, even if you were to apply that plain error standard under Covian, you know, applying a plain error analysis in this case to not that it's not included in the indictment, but the fact that it was defense argues that it was determined by the court. Again, that's not really accurate because, in this case, it was proved to a jury beyond a reasonable doubt. I see my time has expired. I have one question. Yes, Your Honor. In order to reach your result in reliance on Cotton, is it necessary to overrule any of our prior cases? Well, Your Honor, I think that it definitely, yes. To be quite frank, I think that if, I think that Dubow, Dubow, I would agree, Your Honor. I think that those have been implicitly overruled by both Cotton. And I wanted to apologize to the court. That site was from Washington v. Requencro, which is the new case from the Supreme Court, which was dealing with Blakely and how Blakely is not a structural error and is subject to harmless error analysis. It's actually not, Your Honor. It came out after we filed that. I do have the site for the court, however. I was looking at your brief. I don't see any of those listed. No. Actually, all of those cases came out after the government filed its brief and actually after the defendant filed his reply. And we didn't have any 28-J letter? No. No, Your Honor, and I apologize. I actually did get the defendant's 28-J letters this week. I was in trial, and I did not provide a 28-J letter to the court. Can you provide a solicitation? Yes, I will. The – But Dubow was a case where the objection was raised prior to trial. In fact, so was Resendez-Ponce, Your Honor. So one could – one does not necessarily have to overrule Dubow. Just as a theoretical matter, one could distinguish it on the ground that there the objection was made in a timely fashion. Here you say it was not. Perhaps opposing counsel would disagree on that. But assuming you're right on that ground, that would be a way of distinguishing Dubow. You're absolutely correct, Your Honor, and I believe that that's true for both cases because in Resendez the defendant also moved to dismiss the indictment. You said Resendez was on cert? That's correct, Your Honor. There's actually – When you say on cert, it means the government has filed a cert petition or – It's been accepted, Your Honor, is my understanding. It was a cert grant. Yes, and in fact, there's some fear that the Supreme Court may not reach the structural error issue because they may decide it based on the failure to object that Your Honor just referenced. The Requenco case is the Supreme Court case. It's 126 Supreme Court 2546. That's the quote that I read to the court about the policy for why errors in the indictment should be subject to harmless error. That's Requenco? Requenco, yes. It's Washington v. Requenco. And there was another case. Would the court like the Dubow or the Cotton sites? Well, if you just gave all the sites to the clerk. I'll do that. Thank you. I have one question. Yes, Your Honor. Just so I can understand your dialogue with Judge Kaczynski. If there was no objection made pre-trial to the indictment, if there was no objection to the evidence that went to the jury, then we're either in plain error or no error. That's correct, Your Honor. Regardless of what the Supreme Court said. That's correct, Your Honor, except that. Unless there's an issue of fact. If we go with your argument that the jury was presented with discrete facts about one date of deportation and one date of conviction, and the timing of those went to the jury, and if they could have only gone one way, I don't know if it has anything to do with any prior presence. It's just this case. Well, that's correct. I'm missing something. Well, no, two responses to that question, Your Honor. The first is that if Dubow and Resendez were to be followed, there could be some argument that it's not. If they're factually different, that there was an objection made. Right. In this case, there was no objection forever. So, I mean, it's just like another piece of evidence, unless there's something that I missed about what's necessarily in the indictment. If all this evidence went in, I might be missing something. But you think that the Supreme Court cases clean that up anyway? I think so, and I think it certainly will when Resendez is ruled on. In the second answer. Are you saying we should wait for Resendez or your case can go before that? Well, I don't think it's necessary to reach that issue in this case, because there were no objections, and because the jury reached a verdict, it's inessentially found beyond a reasonable doubt that the defendant was removed on this date because it was the only date that was presented. That's my concern. That's correct, Your Honor. Unless the Court has any further questions, I'll submit. Thank you, counsel. Your Honor, there was an objection raised below during the sentencing phase of this trial in the objections to the pre-sentence report. And was that on the first one, or at the time that the addendum was proposed? This is on the first set of objections, Your Honor. That would be on page 361 of the excerpt to record. 361 of the excerpt to record. That's correct. It was part of the general Almendar's-Torres argument that was being made to the Court, including all of the apprendee rights. I'm going to have to compare this. I don't want to waste the Court's time, but I went through the objections made at the time after the amendment was filed, and I don't remember, as counsel went through the specific objections that he was making before sentencing, after the amendment was in, I don't remember that objection. That's true. I believe that the trial counsel just raised the general Almendar's-Torres argument. Oh, yeah. We've got another problem with almost similar to what was argued before, is if you didn't raise it, now we're going to have to consider it again because what? Well, it was raised in the moving papers, the objections at the time. But the judge is going to sentence. Everybody is arguing what the judge should or shouldn't be doing in arguing Almendar's-Torres, and no objection is made, and it's not brought to the judge. So we're going to sandbag the judge now and bring up the objection that wasn't made before. I must have missed something here. Well, it wasn't made orally. It wasn't part of, as you noticed, Judge Brunetti at the end, trial counsel, just said, I'm going to place the remainder of the objections on the record, and he wheeled through several of them. He was darn specific. He said that, but then he continued on and became very specific. I don't want to waste the Court's time or your time. I just want to make sure I understood your position because I'll go back and review that again. But anyway. I did look for specific where the indictment issue was raised, and it was raised in general as part of the Apprendi rights and then was specifically stated that although we agree that Almendar's-Torres conceivably addressed the indictment issue as to the prior conviction, nonetheless that Mr. Calderon was objecting to that and was saying that that was incorrect as to the 1326B allegations for all of them, which would include the deportation. The one area which Covey and Sandoval finds is not covered by the Almendar-Torres prior conviction exception. There is no prior deportation exception to Apprendi, and that's exactly the problem here. The district court found that there was a sequence of a prior deportation with a prior conviction that was not presented in the indictment. Thank you, counsel. Thank you. The case is adjourned. It will be submitted. The next case for argument is in Couser v. Femby.
judges: Reinhardt, Brunetti, Kozinski